John **BOWERS**, Albert Cernadas, M. Brian Maher, Anthony Pimpinella, Anthony J. Tozzoli, Peter F. Vickers, and Karl J. Wettstein as the Trustees for and on behalf of the NYSA–ILA Pension Trust Fund, Plaintiffs,

v.

**EGYPTIAN NATIONAL LINE, Defendant.**

No. 88 Civ. 7317 (CSH).

United States District Court, S.D. New York.

Sept. 13, 1989.

Thomas W. Gleason (Kevin Marrinan, of counsel), Lambos & Giardino (C.P. Lambos, Donato Caruso, of counsel), New York City, for plaintiffs, Trustees of the NYSA–ILA Pension Fund.

Snow Becker Krauss P.C. (Alan Van Praag, of counsel), New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs are trustees of the NYSA–ILA Pension Trust Fund. Defendant Egyptian National Line (ENL) is the national flag shipping line of the Arab Republic of Egypt.[1] Plaintiffs sue ENL pursuant to the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1461 (MPPAA) to collect withdrawal liability payments. The MPPAA amended the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1368. Plaintiffs move for summary judgment pursuant to Rule 56, F.R.Civ.P., adjudging that ENL is liable for withdrawal liability to the Pension Trust Fund in the Amount of $299,048 plus liquidated damages of $59,809.60 interest, attorneys' fees and costs. ENL resists the motion on the ground that genuine issues of material fact exist which preclude summary judgment.

### Background

The creation and operation of the NYSA–ILA Pension Trust Fund (the Fund) arise out of "the unique history of the longshore industry in the Port of New York." *Korea Shipping Corporation v. New York Shipping Association–International Longshoremen's Association Pension Trust Fund*, 880 F.2d 1531, 1533 (2d Cir.1989), to which reference may be made for a useful historical review. In short, the Fund is a multiemployer pension plan funding retirement benefits for longshore workers in the Port. Benefits provided by the Fund are funded through contributions prescribed in the New York Longshore collective bargaining agreement between the New York Shipping Association, Inc. and the International Longshoremen's Association, AFL–CIO. Assessments at the pertinent times were based solely on tonnage loaded and discharged at the Port, and were paid by the NYSA's member carriers to the NYSA, which in turn made payments to the Fund. Withdrawal liability is provided for by 29 U.S.C. § 1381(a): "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined ... to be the withdrawal liability."

The collective bargaining agreement establishing a tonnage and container unit assessment for funding longshore employee benefits, including pensions, is known as the General Cargo Agreement (GCA). In support of their contention that ENL subscribed to the GCA, plaintiffs attached to their motion papers the signature of one Robert J. Fago on behalf of "ALEXANDRIA NAVIGATION N.Y. LTD. AS GENERAL AGENTS FOR ENL." The affidavit of Hussein Sami, submitted by ENL in opposition to the instant motion, identifies Alexandria Navigation (N.Y.) Ltd. as general agent in the United States for ENL,

---

1. While, as do the parties in their briefs, I use the appellation "Egyptian National Line" throughout, the correct name for defendant is apparently "Egyptian Navigation Company", which presumably used ENL as a trade name.

and, like ENL, a totally owned instrumentality of the Egyptian government.

It is common ground that during the period 1982 through 1986, ENL paid $696,137.87 in assessments under the GCA, of which $170,123.14 constituted contributions to the Fund.

Plaintiffs averred in their motion papers that since August 20, 1987 no ENL vessel has called at the Port. The Sami affidavit states that one vessel called at the Port in January 1989; however, there is apparently no dispute that ENL's subscription to the GCA was not renewed for the three-year contract from October 1, 1986 through September 30, 1989.

The following facts are admitted by the pleadings: On April 18, 1988, in accordance with 29 U.S.C. § 1399(b)(1), the Fund sent ENL a written demand for payment of its withdrawal liability in consecutive quarterly installments. ENL did not make a quarterly payment on June 1, 1988. ENL requested review of the Fund's April 18, 1988 written demand in a letter dated April 20, 1988. The Fund denied ENL's request for review on May 23. ENL has failed to avail itself of the statutory arbitration procedures set forth in 29 U.S.C. § 1401.

In these circumstances, plaintiffs contend that the statute entitles them to summary judgment for the relief indicated.

ENL makes two arguments. First, it denies that it was bound by the GCA contract. That is because Fago was not an officer of Alexandria or ENL, being "merely a line manager for Alexandria", Sami affidavit at 2, and without authority to execute the agreement on behalf of ENL.

Second, ENL denies that it has ceased operations at the Port of New York. That denial is based not so much upon the single call of an ENL vessel at the Port in 1989 as it is upon the nature of ENL's shipping operation. The Sami affidavit says that ENL vessels carry only government cargoes to and from the United States. Sami's affidavit says at 2:

> Cargo is loaded in the United States solely at ports designated by the United States Agency for International Development (AID), whose cargoes we carry to

Egypt. Conversely, all cargoes carried to the United States aboard ENL vessels are cargoes of the Egyptian government destined for discharge at United States ports. Thus, we are hostage to the ports that AID and our government chooses, and plaintiff seeks to penalize defendant for matters beyond its control.

The two governments who arranged these matters provided no cargoes for ENL to carry to or from the Port of New York. In these circumstances, ENL argues that it should not be regarded as an "employer" within the statutory scheme; or at least not that sort of employer whose profit-motivated cessation of operations within a particular port subjects it to withdrawal liability.

### Discussion

The Fund contends that all ENL's contentions are foreclosed by the latter's conceded failure to invoke timely arbitration under the statute.

The Fund is correct only to the extent that the issues are arbitrable, a question depending in turn upon their nature and whether resolution requires fact finding. *Compare New York State Teamsters Conference Pension and Retirement Fund v. McNicholas Transportation Co.*, 848 F.2d 20 (2d Cir.1988) (defendant's contention that cessation of payments to Fund resulted solely from strike, which fund denied, posed factual issue of causation, so that defendant's failure to demand arbitration foreclosed the issue) with *T.I.M.E.–DC v. Management–Labor Welfare & Pension Funds of Local 1730 International Longshoremen's Association*, 756 F.2d 939 (2d Cir.1985) (where defendant's withdrawal liability turned solely upon statutory interpretation, arbitration not required and defendant's legal argument not foreclosed).

■ In the case at bar, the first issue is whether ENL is bound by the collective bargaining agreement. It is arguable that this is an issue for the Court and not the arbitrator; *compare* The Federal Arbitration Act, 9 U.S.C. §§ 1, 4 (where making of agreement to arbitrate is at issue, court

determines question in summary proceeding). But I need not consider the point further because there is no legal substance to ENL's contention. As noted, between 1982 and 1986 ENL paid over $600,000 in assessments under the GCA, never apparently suggesting that it was not bound to do so. Having recognized by its actions the effectiveness of the contract, ENL may not now repudiate its agent's authority to execute it. *See O'Hare v. General Marine Transport Corp.,* 740 F.2d 160, 168 n. 4 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). That is particularly true where Mr. Fago, a "line manager" for ENL's general agent in the United States, was clearly clothed with at least apparent authority when he signed the GCA on behalf of ENL.

■ To the extent that ENL bases its argument that it has not withdrawn from operations in the Port on the basis of a single voyage in 1989, that is clearly an arbitrable issue and is now foreclosed.

■ I reach a different conclusion with respect to ENL's contention that its status as government-owned carrier wholly dependent upon government cargoes takes it outside the statutory scheme. That is a question of statutory construction for the courts. *Cf. Korea Shipping Corporation v. New York Shipping Association–International Longshoremen's Association Pension Trust Fund, supra,* (whether statutes's definition of "employer" should be limited to common law understanding of the relationship). Accordingly I reach ENL's contention, but find no merit in it.

The fact that ENL is an agency of a foreign government, namely Egypt, does not alone insulate it from the operation of the MPPAA. *See Bowers v. Transportes Navieros Ecuadorianos (Transnave),* 88 Civ. 5481 (S.D.N.Y., decided July 28, 1989) (Ward, J.). At bar, ENL does not directly contend otherwise. Rather, the argument is based upon the extent to which the governments of the United States and Egypt determine the ports at which ENL vessels call.

ENL has withdrawn from operations in the Port of New York and from the operation of the multiemployer plan of which it had been a participating member. For the reasons stated, ENL is foreclosed from contending otherwise. I appreciate that a commercial carrier may cease calling at a port for reasons of profit or loss, while a government-owned carrier calls at ports not so much to make money as to further governmental policy by the carriage of particular cargoes. But I do not regard the distinction as relevant to the statutory scheme. ENL vessels called at the Port of New York in furtherance of Egypt's policy. The longshoremen of the Port by their labors permitted the implementation of that policy. ENL must be regarded as having taken the facilities of the Port *cum onere,* including the obligation to pay assessments to the GCA (which ENL recognized by paying them) and the statutory withdrawal liability (which ENL now seeks to avoid).

That withdrawal liability is no doubt unwelcome, but there is no basis in fact or law to excuse ENL from the obligation.

Plaintiffs' motion for summary judgment is granted. Counsel for plaintiffs are directed to settle an order and judgment consistent with this Opinion on ten (10) days' notice.

It is SO ORDERED.